UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE SLUSSER, #236917,

                Petitioner,

v.                                  CASE NO. 2:10-CV-14979
                                  HONORABLE PAUL D. BORMAN

HUGH WOLFENBARGER,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.    Introduction**

Michigan prisoner Tyrone Slusser ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree felony murder, MICH. COMP. LAWS §750.316(1)(b), two counts of assault with intent to commit murder, MICH. COMP. LAWS §750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS §750.227b, following a jury trial in the Ingham County Circuit Court. Petitioner was sentenced as a second habitual offender, MICH. COMP. LAWS §769.10, to life imprisonment without the possibility of parole on the murder conviction, concurrent terms of 39 to 60 years imprisonment on the assault convictions, and a consecutive term of two years imprisonment on the felony firearm conviction in 2005.

In his pleadings, Petitioner raises claims concerning the identification procedures, the use of alleged perjured testimony, a limitation on witness cross-examination, the conduct of the

prosecutor, and the effectiveness of trial and appellate counsel.  Respondent has filed an answer to the petition contending that it should be denied.  For the reasons set forth, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and denies the petition.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## II.   Facts and Procedural History

Petitioner's convictions arise from the shooting death of Melissa Limas and the assault upon Pedro Flores and Sam Hernandez outside Lucky's Bar in Lansing, Michigan during the early morning hours on September 18, 2004.  The trial testimony revealed that Petitioner was involved in an altercation at the bar with men named Billy Parsons and Lorenzo DeYoung.  Petitioner and DeYoung then got into a fist fight in the parking lot.  Eventually one of the bar bouncers, Jevon Williams, escorted Petitioner and his girlfriend, Maria Neil, to their car.  Petitioner told Williams that he was cool with him but mad at DeYoung and told Williams to go back into the bar.  A few minutes later, shots were fired at Sam Hernandez's truck.  Melissa Limas, a passenger in the truck, was hit.  She died from a .45 caliber gunshot wound to the head.

Several people witnessed the shooting.  Pedro Flores, the other passenger in Hernandez's truck, testified that they had just left the bar and were in the parking lot talking to Lisa Clark and Violet Garza at about 2:00 a.m. when he heard gunshots.  Hernandez said, "Someone shot my truck; I'm about to ram him."  Flores did not see the shooter, but turned and saw the back of a dark car. They tried to follow the car, but noticed that Limas was bleeding and returned to the bar.  The police arrived several minutes later.

Sam Hernandez testified that Melissa Limas was his girlfriend.  He recalled sitting in his truck with Limas and Pedro Flores after leaving the bar that night.  Flores was in the passenger seat

2

talking to two friends when Hernandez saw a dark Cadillac pull in front of his car, saw a gun come out of the window, and saw gunfire. He tried to follow the Cadillac but it was too fast, and then Melissa slumped over on him. He drove back to the bar and tried to revive her before the police arrived. There were bullet holes in the car and a bullet had lodged in the seat by his head. Hernandez identified Petitioner as the shooter at the preliminary examination and at trial. He admitted that he picked another person in a pre-trial photo array, but claimed that Petitioner's hair was different in the photograph. He recognized Petitioner at the preliminary examination as he walked down the hallway to the courtroom.

Flores and Hernandez both testified that they were drinking that night, but were not intoxicated. They also admitted initially telling the police that Hernandez's first name was Al, his brother's name, because Hernandez had outstanding warrants and did not want to go to jail. Flores and Hernandez both thought that Flores looked like Lorenzo DeYoung.

Violet Garza testified that she left the bar at closing time with her friend Lisa Clark. They were waiting outside for their ride home and stopped to talk to her friends Pedro and Melissa, who were sitting in Sam Hernandez' truck. She and Clark had a few drinks that night, but were not intoxicated. The two women were at the passenger door of the truck talking when a car pulled up and someone yelled, "Did we have a fucking problem?" She yelled back that there was no problem. Four or five shots were fired at the truck and she saw sparks. The car took off and the truck followed. Garza identified Petitioner as the shooter at the preliminary examination and at trial. She admitted that she identified another person in a pre-trial photo array and explained that Petitioner's hair was different in the photograph. She recognized Petitioner at the preliminary examination when he was brought down the hallway from the jail.

3

Lisa Clark testified that she saw the driver when the car pulled up near them.  She was 10 to 11 feet away from the car when the shooting occurred.  She identified Petitioner as the shooter at the pre-trial photo array, at the preliminary examination, and at trial.  She recalled seeing Petitioner in the hallway before the preliminary examination.  When she saw him coming down the hallway from the jail, she said, "Here he comes."  Security video recordings, which showed Petitioner at the bar, but did not depict the shooting, were played for Garza and Clark and admitted into evidence.

Petitioner's girlfriend, Maria Neal, testified that she was working as a waitress at Lucky's Bar on the night of the shooting.  Petitioner was at the bar and became involved in an altercation. Jevon Williams, a bouncer, took Petitioner outside and a fight occurred between Lorenzo DeYoung and Petitioner. Williams separated the two men, escorted Neal and Petitioner to Petitioner's car, and told them to go home.  As they drove past the bar, DeYoung chased them on foot.  Petitioner drove several blocks away and stopped the car.  She and Petitioner argued for 20 minutes and then she exited the car.  She did not see the shooting.

One of the bar owners, Octavio Hernandez, testified that he unlocked the bar doors after the shooting when people were pounding on the door.  He saw Sam Hernandez and the women crying and saying that the man who was in the fight came back and shot at them.  Octavio Hernadez's brother, Roberto Hernandez, observed the same events.  He also recognized Petitioner's car in the video recording.

Several police officers testified at trial.  Lansing Police Investigator Jeffrey Hudak testified that he found four .45 caliber shell casings outside Lucky's Bar shortly after the shooting.  Later that day, he went to 1425 Lyons Street in Lansing where he found a .45 shell casing on the ground below

4

the driver's door of Petitioner's car.  He subsequently went to Petitioner's residence at 1436 Lyons Street to collect evidence pursuant to a search warrant.  He found a .45 caliber bullet in a dresser drawer and a partially empty box of .45 caliber bullets in a safe under a bed.  Approximately 15 rounds were missing from the box.  Officer Hudak testified that the recovered shell casings were tested for fingerprints, but that no identifications could be made from them.  Lansing Police Officer Matt Krumbach was assigned to watch Petitioner's car parked at 1425 Lyons Street.  He saw Petitioner approach the car.  When another officer told Petitioner to step away from the car, Petitioner fled.  Another officer pursued and arrested Petitioner, who identified himself as Ty Simpson.  Michigan State Police Firearm Expert Rhinehard Pope testified that the five .45 casings recovered by the police were all fired from the same weapon.  Those five casings were the same brand and same construction as the cartridges found at Petitioner's residence.

Police officers also testified about recorded telephone calls that Petitioner made from the police lock-up after he was arrested.  Petitioner made five phone calls that were played for the jury. The recordings were not transcribed, but the prosecutor discussed them during closing arguments. In one call, Petitioner was crying and told his girlfriend that he let her down.  In another call, Petitioner told a friend to get rid of "it" because his hands were all over it, that it was in a locker in his shop, and to break the "punk ass" padlocks to get it.  In a third call, Petitioner told a friend that he was stupid to return to the car and "what's done is done."

Petitioner did not testify at trial, but called witnesses in his defense.  Roommates Kelly Forquer and Jennifer Siaybough, who lived near Lucky's Bar, both testified that Petitioner was at their home on the night of the shooting.  He was very intoxicated and left around 2:00 a.m.  Teresa Aguillar testified that she was at the bar on the night of the shooting.  She saw Petitioner, who is the

father of her child, exchange words with a bouncer at the bar. She also testified that Petitioner owed child support.

At the close of trial, the jury found Petitioner guilty of the charged offenses after a short period of deliberation. The trial court subsequently sentenced him to the terms of imprisonment previously set forth.

Petitioner, through counsel, filed an appeal of right with the Michigan Court of Appeals raising claims concerning the impeachment of an alibi witness, the conduct of the prosecutor, the validity of a search warrant, the sufficiency of the evidence, the identification procedures, the effectiveness of trial counsel, and cumulative error. The court denied relief on those claims and affirmed Petitioner's convictions. *People v. Slusser*, No. 262997, 2006 WL 3333080 (Mich. Ct. App. Nov. 16, 2006) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Slusser*, 478 Mich. 927, 732 N.W.2d 914 (2007).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising claims concerning the trial court's jurisdiction, the use of perjured testimony, the violation of a sequestration order, a limitation on witness cross-examination, and the effectiveness of trial and appellate counsel. The trial court ordered briefing on the ineffective assistance of appellate counsel issue, found that the jurisdictional issue lacked merit, and denied relief on the other claims pursuant to Michigan Court Rule 6.508(D)(3). *People v. Slusser*, No. 04-1265-FC (Ingham Co. Cir. Ct. June 10, 2008). Following briefing, the trial court determined that appellate counsel was not ineffective and denied relief from judgment. *People v. Slusser*, No. 04-1265-FC (Ingham Co. Cir. Ct. Sept. 12, 2008). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals,

6

which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Slusser*, No. 293493 (Mich. Ct. App. Nov. 23, 2009).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Slusser*, 487 Mich. 852, 784 N.W.2d 209 (2010).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.     He was denied due process by the use of an impermissibly suggestive identification procedure.

II.    He was denied a fair trial by the knowing use of perjured testimony by the prosecutor and the failure to correct the same.

III.   He was denied a fair trial and the right of confrontation by the exclusion of evidence and the limitation on cross-examination of prosecution witnesses.

IV.    He was denied a fair trial and prejudiced by improper prosecution argument.

V.     He was prejudiced by the ineffective assistance of trial counsel.

VI.    He was prejudiced by the ineffective assistance of appellate counsel.

Respondent has filed an answer to the petition contending that it should be denied because the claims are barred by procedural default and/or lack of merit.  Petitioner has filed a reply to that answer.

## III.   <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this case because Petitioner filed his petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also*

9

*Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.**    **Discussion**

    A.    Direct Appeal Claims

        1.    Suggestive Identification - Hallway

Petitioner first asserts that he is entitled to habeas relief because prosecution witnesses' identifications of him as the shooter were tainted by an unduly suggestive pre-trial procedure - the witnesses' view of him in shackles while being escorted down a hallway to the courtroom for the preliminary examination.[1]  Respondent contends that this claim lacks merit.

Due process protects a criminal defendant against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures.  *Moore v.*

---

[1]Petitioner also asserts that the witnesses' identifications were tainted because they viewed bar security videos of him prior to trial.  This specific issue was not raised on direct appeal and was first presented to the state courts on collateral review.  The Court shall therefore address the issue in Part IV. B. of this opinion.

*Illinois*, 434 U.S. 220, 227 (1977).  A pre-trial identification procedure violates the Constitution

if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable

mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388

U.S. 293, 301-02 (1967).  In other words, a pre-trial identification violates due process when the

pre-trial procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood

of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384 (1968).  If a witness

is exposed to an unduly suggestive pre-trial identification procedure, the witness's in-court

identification must be suppressed unless the identification has an independent origin untainted by

the suggestive pre-trial procedure.  *United States v. Wade,* 388 U.S. 218, 241 (1967).

Applying Supreme Court precedent, the United States Court of Appeals for the Sixth Circuit

follows a two-step analysis in determining whether an identification is admissible.  *See United

States v. Crozier,* 259 F.3d 503, 510 (6th Cir. 2001) (citing *Ledbetter v. Edwards*, 35 F.3d 1062,

1070 (6th Cir. 1994)).  A court must first determine whether the identification procedure was

suggestive.  *Id.*  If the court finds that the procedure was suggestive, then it must determine

whether, under the totality of the circumstances, the identification was nonetheless reliable and

therefore admissible.  *Id.*  To determine reliability, a court considers five factors:  "(1) the

opportunity of the witness to view the perpetrator during the crime; (2) the witness's degree of

attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator;

(4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the

length of time between the crime and the identification." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188,

199 200 (1972)).  "'Against these factors is to be weighed the corrupting effect of the suggestive

identification itself.'"  *Id.* (quoting *Manson v. Brathwaite,* 432 U.S. 98, 114 (1977)); *see also Carter v. Bell,* 218 F.3d 581, 605 (6th Cir. 2000).

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive.  If a defendant meets this burden, then the prosecutor must demonstrate that the identification was independently reliable.  *Wade*, 388 U.S. at 240 n. 31; *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial misidentification, it is for the jury or fact-finder to determine the ultimate weight to be given to the identification.  *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992); *Johnson*, 344 F. Supp. 2d at 1090.

In this case, the Michigan Court of Appeals addressed this issue as part of Petitioner's insufficient evidence claim and concluded that it lacked merit.  The court explained:

> Defendant argues that the witnesses who identified him were tainted by talking to each other just after the shooting, and the witnesses who did not identify him in a photo lineup were further tainted by having defendant pointed out to them in a hallway prior to the preliminary examination. At least one witness, Lisa Clark, did identify defendant in a photo lineup after the shooting. Clark, Violet Garza, and Hernandez all indicated that the photo of defendant in the photo lineup looked different than defendant looked on the night of the shooting because his hair was different. Once they saw him in person, they all identified defendant as the shooter. Any potential problems with their identification were all laid out before the jury by defendant as part of his case, and it is ultimately up to the jury, as trier of fact, to decide whether to believe or disbelieve each witness. *People v. Taylor*, 185 Mich App 1, 8; 460 NW2d 582 (1990). Other evidence suggested that defendant was the shooter, including testimony from Clark and Hernandez that the shooter's car matched defendant's black Cadillac, a shell casing identical to the ones used in the shooting found next to defendant's car, and shells of the same type and brand also found in defendant's residence.

*Slusser*, 2006 WL 3333080 at *3.

12

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2]  Petitioner argues that because witnesses Sam Hernandez and Violet Garza did not identify him at the pre-trial photographic array, their in-court identifications were tainted by their observation of him in shackles as he was led down the hallway to the preliminary examination.  In *Perry v. New Hampshire*, _ U.S. _, 132 S. Ct. 716 (2012), however, the Supreme Court ruled that the Due Process Clause does not require preliminary judicial inquiry into the reliability of an eyewitness identification unless the identification was procured under unnecessarily suggestive circumstances arranged by law enforcement officers.  In the absence of official misconduct, challenges to the reliability of eyewitness identification are matters for the jury to determine based on the evidence.  The Court explained:

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

132 S. Ct. at 721.

The record indicates that the witnesses' identifications of Petitioner were based upon their recollections of the incident and their observations of Petitioner in court.  Although they saw Petitioner in handcuffs in the hallway before the preliminary examination and then identified him at that proceeding, such contact was circumstantial and not orchestrated by the authorities.  Additionally, the statement, "Here he comes," was made by fellow witness Lisa Clark, not the police.  The incident was thus not an unduly suggestive procedure arranged by law enforcement.

---

[2]The Court would reach the same result under a *de novo* standard of review.

13

*See, e.g., United States v. Espinal-Almeida*, 699 F.3d 588, 603 n. 16 (1st Cir. 2012) (citing *Perry* and noting that a witness running into a defendant in a courthouse hallway is "clearly not" an incident orchestrated by police); *Mock v. Rose*, 472 F.2d 619, 621 (6th Cir. 1973) (ruling that robbery victim's view of the defendant at the police station was not suggestive where the confrontation was accidental and unplanned); *United States v. Hicks*, 967 F. Supp. 242, 248 (E.D. Mich. 1997) (Rosen, J., ruling that witness's view of handcuffed defendant being led down police station hallway by two officers was not unduly suggestive and citing *Mock, supra*.). The witnesses also observed Petitioner at the defense table at the preliminary examination. The Supreme Court has recognized that in-court identifications "involve some element of suggestion," but has determined that they do not require a pre-trial determination of admissibility. *Perry*, 132 S. Ct. at 727. Petitioner has not shown that the identifications here resulted from unnecessarily suggestive circumstances arranged by law enforcement. Consequently, under *Perry*, the question of the reliability of the witnesses' in-court identifications was for the jury to decide. Petitioner had sufficient opportunity to challenge those identifications at trial.

Furthermore, even if the incident was impermissibly suggestive, the witnesses' in-court identifications of Petitioner were sufficiently reliable. Lisa Clark identified Petitioner in the photo array, at the preliminary examination, and at trial. She observed him in the bar prior to the shooting, saw his face as he pulled up in his car 10 to 11 feet away, spoke to them, and fired his gun. Although it was nighttime, the parking lot was well lit and Sam Hernandez's headlights were on Petitioner's car. Clark's descriptions of the shooter and his car were consistent. She was certain of her identifications, which occurred shortly after the shooting (photo array), a month after the shooting (preliminary examination), and six months after the shooting (trial).

14

Sam Hernandez and Violet Garza did not identify Petitioner in the photo array, but both identified him at the preliminary examination and at trial. They observed Petitioner in his car in sufficient lighting from about 10 feet away. Garza looked at Petitioner when he spoke and she responded, and both witnesses saw his face for a few moments. Both witnesses explained that they were unable to identify Petitioner in the photo array because his hair was different at the time of the shooting. They immediately recognized him in person at the preliminary examination and at trial, and they were sure of their identifications.

While all three witnesses admitted drinking that night, they denied being intoxicated or having difficulty observing or recalling the incident. Their identifications of Petitioner as the shooter were also consistent with other evidence presented at trial. Given such circumstances, the Court finds that the witnesses' in-court identifications were sufficiently reliable and there was no risk of substantial misidentification. Petitioner has failed to establish a due process violation. Habeas relief is not warranted on this claim.

### 2.    Prosecutorial Misconduct

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by shifting the burden of proof while commenting on Petitioner's silence, by denigrating defense counsel, and by commenting on a witness's credibility. Respondent contends that the claims are barred by procedural default and/or lack merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied

upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on these claims.  In denying relief, the court relied upon the failure to object at trial.  *See Slusser*, 2006 WL 3333080 at *1.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  The Michigan Court of Appeals denied relief on these claims based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, Petitioner alleges ineffective assistance of trial counsel as cause to excuse this procedural default. Petitioner, however, cannot establish that trial counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), or that he suffered actual prejudice, as these claims lack merit and do not warrant relief.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

17

Petitioner first claims that the prosecutor improperly shifted the burden of proof and commented on his silence during closing arguments by stating that Petitioner had not asserted his innocence in the recorded phone calls he made from jail.  Specifically, Petitioner objects to the following statement: "You never heard him on those phone calls saying I didn't do it, I'm innocent. Never heard him talk about his alibi witness, Maria Neal, the fact they were arguing 20 minutes about Taco Bell, you never heard that."  Trial Tr. IV, p. 15.

It is well-settled that a prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or imply that the defendant has " any obligation to produce evidence to prove his innocence."  *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968–69 (6th Cir. 1993)).  It is also well-settled that a prosecutor may not use a defendant's silence after being arrested and receiving *Miranda* warnings as substantive evidence of guilt or for impeachment.  *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976) (use of defendant's silence after arrest and *Miranda* warnings for impeachment violates due process); *Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009) (prosecutor may not use defendant's decision to remain silent as substantive evidence of guilt).  A prosecutor may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory.  *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

In reviewing this claim for plain error, the Michigan Court of Appeals determined that the prosecutor did not improperly shift the burden of proof to Petitioner nor improperly reference his post-*Miranda* silence.  The court stated:

> The prosecutor did not attempt to suggest that defendant's silence indicates guilt. Rather, defendant spoke multiple times on a police telephone that he knew was

18

recording his calls, and the prosecutor permissibly commented on the content of those conversations, including what was not discussed. A prosecutor is permitted to argue the evidence and all reasonable inferences arising from the evidence. *People v. Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *see also People v. Avant*, 235 Mich App 499, 509; 597 NW2d 864 (1999).

*Slusser*, 2006 WL 3333080 at *1 (footnote citation omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor properly commented on the content of Petitioner's telephone calls to his family and friends. The prosecutor did shift the burden of proof nor violate *Doyle*. Rather, the record indicates that the prosecutor commented on Petitioner's knowingly recorded telephone calls with his family and friends and his failure to support his theory of defense in those conversations. *Doyle*, in contrast, concerned the defendant's failure to explain his version of events to an arresting officer, not private citizens. *See United States v. Tab*, 259 F. App'x 684, 696-97 (6th Cir. 2007) (discussing *Doyle* and denying relief on similar claim); *United States v. Henry*, 206 F. App'x 452, 457 (6th Cir. 2006) (distinguishing *Doyle* and ruling that prosecutor's comment that defendant failed to tell his version of events to friends and witnesses was a "permissible method" of impeachment). Petitioner has not shown that the prosecutor erred or that the disputed remarks rendered his trial fundamentally unfair.

Petitioner next asserts that the prosecutor improperly denigrated defense counsel by stating that he was trying to mislead the jury. It is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel. *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). Prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), "or argue that counsel is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008).

19

The Michigan Court of Appeals reviewed this claim for plain error and determined that the prosecutor's remark was improper, but that the error was harmless beyond a reasonable doubt. The court reasoned that the prosecutor's remark was a lone comment in a six-day trial and the evidence of Petitioner's guilt was overwhelming. *Slusser*, 2006 WL 3333080 at *2. The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. While the prosecutor's remark was improper, it was not so pervasive or prejudicial as to render the trial fundamentally unfair. In other words, to the extent that an error occurred, it was harmless and did not affect the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that a constitutional error implicating trial procedures is considered harmless on habeas review if it did not have a "substantial and injurious effect or influence in determining the jury's verdict"); *see also Fry v. Pliler*, 551 U.S. 112, 117–18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).

Lastly, Petitioner asserts that the prosecutor improperly commented on witness credibility by stating that Maria Neal would lie for Petitioner. It is well-established that a prosecutor may not express his or her own personal opinions as to a witness's credibility. *United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charges against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *Young*, 470 U.S. at 18-19; *Cristini v. McKee*,

526 F.3d 888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases).

In reviewing this claim for plain error, the Michigan Court of Appeals concluded that the prosecutor's remarks about Maria Neil's credibility were based upon the evidence that she had a child with Petitioner and were appropriate. The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor did not improperly comment on Neal's credibility. Rather, the prosecutor argued that she should not be believed based upon her testimony, her relationship with Petitioner and her motivation to lie, and the other evidence at trial. It is well-established that a prosecutor may argue reasonable inferences from the evidence, *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000), and may argue from the facts that a witness is or is not worthy of belief. *Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not imply personal knowledge or undisclosed evidence regarding Neal's credibility or Petitioner's guilt. Petitioner has failed to show that the prosecutor's comments were improper or that they deprived him of a fair trial.

Furthermore, to the extent that any the prosecutor's remarks were improper, they were not so pervasive or misleading as to render the trial fundamentally unfair. Additionally, any potential prejudice to Petitioner was mitigated by the fact that the trial court properly instructed the jurors on the elements of the charged offenses and the burden of proof, discussed the proper consideration of the evidence, explained that the attorneys' comments were not evidence, and directed the jurors not to let sympathy or prejudice influence their decision. *See Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003); *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Jurors are presumed to follow the trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001)

(citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Simply put, Petitioner has failed to demonstrate that the prosecutor's conduct deprived him of a fundamentally fair trial.

Petitioner has also not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### 3. Ineffective Assistance of Trial Counsel

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to request pre-trial identification procedures, for failing to seek suppression of witness identifications, for failing to object to prosecutorial conduct, and for failing to investigate and prepare for trial. Respondent contends that these claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that

22

counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

23

Petitioner asserts that trial counsel was ineffective for failing to seek suppression of the witnesses' identifications of him as the shooter.  Citing *Strickland*, the Michigan Court of Appeals denied relief on this claim.  The court explained in relevant part:

> Defendant's trial counsel did not object to or attempt to suppress the eyewitness identifications by Hernandez and Garza. However, counsel used their testimony to bring out all of the deficiencies and potential problems with their identification at trial, including their intoxication, their failure to identify defendant in the photo lineup, and their encounter with defendant in the hallway before his preliminary hearing. Counsel could not otherwise have demonstrated that some of the eyewitnesses failed to identify defendant as the shooter at the time of the shooting. This was a valid trial strategy to put reasonable doubt in the mind of jurors about the identification of defendant as the shooter at the time of the shooting. That it "ultimately failed does not constitute ineffective assistance of counsel." *People v. Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

*Slusser*, 2006 WL 3333080 at *4-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Given the state court's ruling and this Court's determination that the pre-trial identification procedures were not unduly suggestive and that there was an independent basis for the prosecution witnesses' identifications of Petitioner as the shooter, any motion to suppress those identifications would have been futile.  Counsel cannot be deemed ineffective for failing to make a futile or meritless motion.  *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).  Additionally, the record demonstrates that counsel cross-examined the witnesses about their identifications, attacked their credibility, and brought out the fact that two of the witnesses did not identify Petitioner in a pre-trial photographic array.  The decision to attack the credibility of the identifications through cross-examination, rather than to seek suppression of the identifications or request a live lineup, was a reasonable trial strategy which defeats Petitioner's claim.  *See, e.g., Killebrew v. Endicott*, 992 F.2d 660, 665 (7th Cir. 1993).  Moreover, counsel may

24

have reasonably decided not to request a live lineup in order to avoid the risk that the witnesses would identify Petitioner as the shooter, thereby strengthening their trial identifications.  Counsel's strategy was reasonable under the circumstances.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").  Petitioner has failed to establish that trial counsel was ineffective.

Petitioner next asserts that trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct.  The Michigan Court of Appeals denied relief on this claim finding that Petitioner could not establish that counsel erred as to the prosecutor's proper conduct and that he could not establish that he was prejudiced by counsel's failure to object to the prosecutor's improper comment about defense counsel.  *Slusser*, 2006 WL 3333080 at *4-5.  The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.   Given the state court's ruling and this Court's determination that the prosecutor's comments regarding the recorded telephone calls and Maria Neal's credibility were proper, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct.  As noted, counsel cannot be deemed ineffective for failing to make a futile or meritless motion.  *Steverson*, 230 F.3d at 225.  As to the prosecutor's improper comment, Petitioner cannot establish that he was prejudiced by trial counsel's failure to object given the brevity of the remark, the trial court's jury instructions, and the significant evidence of guilt presented at trial.  Petitioner has failed to establish that trial counsel was constitutionally ineffective.  Habeas relief is not warranted on these claims.

B.     Collateral Review Claims

1.     Procedural Default

As an initial matter, Respondent contends that Petitioner's security video identification, perjured testimony, limitation on cross-examination, and ineffective assistance of trial counsel for failure to investigate claims are barred by procedural default because Petitioner first raised those claims in his state motion for relief from judgment and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

As discussed, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright*, 433 U.S. at 85-87. A procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White*, 431 F.3d at, 524.  The last explained state court judgment should be used to make this determination.  *See Ylst*, 501 U.S. at 803-05.  If the last state court judgment is a silent or unexplained denial, it is presumed that the court relied upon the last reasoned opinion. *Id.*

Petitioner exhausted these claims in the state courts in his motion for relief from judgment and related appeals.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* MICH. CT. R. 6.508(D)(3).  The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural

26

default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The court cited Michigan Court Rule 6.508(D) in addressing these claims, concluded that Petitioner had not shown cause or actual prejudice under Michigan Court Rule 6.508(D)(3), and denied relief. Accordingly, Petitioner's security video identification, perjured testimony, limitation on cross-examination, and ineffective assistance of trial counsel for failure to investigate claims are procedurally defaulted.

As noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750-51; *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley*, 87 F.3d at 784-85.

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his procedural default. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must … determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

27

*Strickland,* 466 U.S. at 690.  Judicial scrutiny of counsel's performance is "highly deferential."  *Id*.

at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

A criminal defendant does not have a constitutional right to have appellate counsel raise

every non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme

Court has explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the … goal of vigorous and effective advocacy …. Nothing in the
> Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left

to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.

1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out

weaker arguments on appeal and focusing on' those more likely to prevail."  *See Smith v. Murray*,

477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored

issues are clearly stronger than those presented will the presumption of effective assistance of

appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate

counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang

winner," defined as an issue which was obvious from the trial record and would have resulted in

reversal on appeal.  *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief

from judgment, appellate counsel's performance fell outside the wide range of professionally

competent assistance.  Appellate counsel presented claims concerning the effectiveness of trial

counsel, the identification procedures, and the impeachment of an alibi witness. Such claims, although ultimately unsuccessful, were substantial. The claims presented in the motion for relief from judgment are not obviously stronger than the claims raised by appellate counsel on direct appeal. To be sure, Petitioner filed a supplemental brief on direct appeal and did not include those issues. Additionally, the state trial court determined that appellate counsel was not ineffective in denying relief from judgment. Petitioner has failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court finds that the defaulted claims lack merit for the reasons stated *infra*.

Furthermore, as previously explained, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. *Murray*, 477 U.S. at 479-80. He has not come forward with new and reliable evidence which shows that he is actually innocent. *See Schlup*, 513 U.S. at 324; *see also Bousley*, 523 U.S. at 623. These claims are thus barred by procedural default, lack merit, and do not warrant relief.

### 2.    Merits of Defaulted Claims

#### a.    Suggestive Identification - Security Videos

Petitioner asserts that he is entitled to habeas relief because the prosecution witnesses' identifications of him as the shooter were tainted when they were shown security videos from the bar prior to testifying at trial. The record, however, reveals that the witnesses viewed the security videos in preparation for trial, just a day or a few days prior to their trial testimony, and well after

29

they had previously identified Petitioner at the preliminary examination.  It is not unduly suggestive to show a surveillance videotape or photograph of a defendant to a witness who has already identified the defendant for the purpose of confirming that the defendant is the person on the videotape or photograph.  *See Gray v. Booker*, No. 03-CV-71658, 2012 WL 4513561, *10 (E.D. Mich. Oct. 2, 2012) (Cohn, J., denying habeas relief on similar claim and citing *United States v. Beverly*, 369 F.3d 516, 539 (6th Cir. 2004)).  The recordings were also admitted into evidence for the jury's consideration.  Nonetheless, even if the procedure was unduly suggestive, the witnesses' in-court identifications were sufficiently reliable.  *See* discussion *supra*.  Petitioner has thus failed to establish a violation of his constitutional rights.  Habeas relief is not warranted on this claim.

b.   <u>Perjured Testimony</u>

Petitioner asserts that he is entitled to habeas relief because the prosecution presented perjured testimony at trial.  Petitioner claims that the authorities encouraged witnesses who did not see the incident or the shooter to testify that they did so and to identify Petitioner as the perpetrator.  Petitioner also claims that Jeffrey Hudak falsely testified that the recovered shell casings were tested for fingerprints and no usable prints were founds.

The United States Supreme Court has made clear that the "deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice."  *Giglio v. United States*, 405 U.S. 150, 153 (1972).  It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  A

30

habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew that the statements were false. *Coe*, 161 F.3d at 343.

Petitioner has made no such showing. Petitioner first claims that Pedro Flores's post-trial deposition (in a dram shop action brought against the bar by the victims' family) shows that he and/or the other witnesses lied at trial about their identifications of Petitioner. Flores's deposition, however, does not show that he or the other witnesses lied at trial. At trial, Flores testified that he did not see any fights in the bar, that he heard, but did not see the shooting, and that he was unable to identify the shooter. His deposition testimony does not contradict his trial testimony. The fact that he recalled seeing the security videos prior to trial does not mean that he lied at trial or that the prosecution knowingly presented false testimony. Flores's deposition testimony also does not prove that any of the other witnesses lied at trial. Both Lisa Clark and Violet Garza recalled watching the security videos just prior to testifying at trial and those recordings were admitted into evidence at trial. Flores' deposition testimony also does not show that the prosecution knowingly presented false testimony. Petitioner has failed to establish a constitutional violation.

Petitioner also relies upon an affidavit from Timothy Covington, who states that Violet Garza told him at a party four or five months after the shooting that she lied at trial about seeing the shooting. Covington's affidavit, however, is not particularly reliable given that the trial did not occur until six months after the shooting. Moreover, even if Covington's affidavit about Garza's statement to him at a party is believed, it does not establish that the prosecutor knew that Garza's

31

was false at the time of trial.  Petitioner's allegations to that end are speculative and conclusory.

He has simply failed to establish that the prosecutor knowingly presented false testimony.

Lastly, Petitioner asserts that Officer Hudak lied about the fingerprint testing on the shell

casings at trial based upon Michigan State Police reports about ballistics testing.  This claim is

belied by the record.  Officer Hudak testified about the Lansing Police Department's investigation

and testing of the shell casings and indicated that no usable prints were recovered from those

casings.  The reports relied upon by Petitioner concern the Michigan State Police investigation and

show that they tested for tool marks and tried to determine whether the casings and bullets could

be matched to other shootings.  Officer Hudak did not testify about the Michigan State Police tests.

While the ballistics evidence was certainly material, Petitioner has failed to establish that Officer

Hudak's testimony was false or that the prosecutor knew of any false statements.  Habeas relief is

not warranted on this claim.

### c.    Limit on Cross-Examination

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in

excluding evidence by limiting defense counsel's cross-examination of Sam Hernandez, the driver

of the vehicle in which the deceased victim was shot.  While being cross-examined by defense

counsel at trial, Hernandez admitted that he originally gave the police a false name at the crime

scene and explained that he was afraid of being arrested on a child support warrant.  When defense

counsel asked him if that was the only reason, the prosecutor objected.  Outside the jury's presence,

defense counsel stated that he wanted to ask Hernandez if he was on parole or was a parole violator

and to further inquire into the child support issue.  The trial court ruled that such inquiries were

impermissible.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." *Id.* at 314. The right of cross-examination, however, is not absolute. Trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 594 (6th Cir. 2012).

In this case, trial counsel was sufficiently able to cross-examine Sam Hernandez about his version of events and his credibility. Defense counsel was able to question Hernandez about the fact that he initially lied to police about his identity and that he did so because he could have outstanding warrants against him. The trial court acted within its discretion in limiting further inquiry into the matter as it was irrelevant to the shooting and only marginally relevant as to credibility given that Hernandez admitted lying to the police. Whether Hernandez was on parole and the details of the child support issue were not material to the case, and there is no indication

33

in the record that Hernandez received any consideration from the police for his testimony. Petitioner has failed to establish a constitutional violation.

Moreover, even if the trial court erred, Petitioner is not entitled to relief. As discussed, a constitutional error that implicates trial procedures is considered harmless on habeas review if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also Fry*, 551 U.S. at 117-18; *Ruelas*, 580 F.3d at 411. Confrontation errors, like other trial errors, are subject to harmless error analysis. *Delaware v. VanArsdall*, 475 U.S. 673, 684 (1986). Any error in limiting cross-examination was harmless given that the jury was aware of Sam Hernadez's credibility issues and given the significant evidence of Petitioner's guilt presented at trial. Habeas relief is not warranted on this claim.

        d.      <u>Ineffective Assistance of Trial Counsel - Failure to Investigate</u>

Petitioner asserts that trial counsel was ineffective for failing to investigate and prepare for trial. Specifically, he claims that trial counsel should have uncovered a Michigan State Police report which indicated that the shell casings recovered by police were not tested for latent prints. Petitioner believes that the report would have supported a claim that crime scene evidence had been tampered with or planted and would have provided basis for impeaching Officer Hudak's testimony that the shell casings were processed for prints, but there was nothing that could be used for identification.

Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251,

258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d 251 at 258. "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)); *see also Wiggins*, 539 U.S. at 526.

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making such strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to present evidence or call witnesses constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Petitioner has not shown that trial counsel was ineffective in this regard. Given the other reports and Officer Hudak's testimony that fingerprint testing was inconclusive, it was reasonable for counsel not to pursue further reports and to instead highlight the fact that Petitioner's fingerprints were not found on the shell casings. As the Supreme Court has stated, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary. . . . Those decisions are due a heavy measure of deference." *Cullen*, 131 S. Ct. at 1407 (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted). Petitioner has not shown that trial counsel's performance was deficient.

35

Moreover, Petitioner cannot establish that he was prejudiced by counsel's conduct. Officer Hudak testified about the Lansing Police Department's investigation and the lab report at issue merely shows that the Michigan State Police did not test for fingerprints. Thus, the report would not have impeached Officer Hudak's testimony. Additionally, Petitioner's claim that the lab report may have provided a basis for further testing which may have supported a claim of evidence tampering is purely speculative. Conclusory allegations are insufficient to establish that counsel was ineffective under the *Strickland* standard. *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). The record indicates that trial counsel sufficiently investigated Petitioner's case and prepared for trial. Petitioner was not deprived of a substantial defense. Habeas relief is not warranted on this claim.

### 3.   Ineffective Assistance of Appellate Counsel

Lastly, Petitioner asserts an independent claim that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the defaulted issues on direct appeal of his convictions. Petitioner is not entitled to relief on any such claim. As discussed *supra*, he has failed to establish that appellate counsel was ineffective under the *Strickland* standard – and the defaulted claims lack merit. Habeas relief is therefore not warranted on this claim.

## V.   **Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 528 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims and reasonable jurists could not debate the correctness of the Court's procedural rulings. A certificate of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 26, 2013

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 26, 2013.

S/Denise Goodine
Case Manager